UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

DAVID P. GIBBS,

    Plaintiff,

    v.

UNION PACIFIC RAILROAD COMPANY,

    Defendant.

Case No. 08-cv-00355--JPG

## **MEMORANDUM AND ORDER**

This matter comes before the Court on the Motion to Dismiss Plaintiff's Complaint as a Discovery Violation (Doc. 23) filed by Defendant Union Pacific Railroad Company. Plaintiff David P. Gibbs has responded (Doc. 30), and Defendant has replied to Plaintiff's response (Doc. 31). For the following reasons, the Court **DENIES** the motion.

## **BACKGROUND**

### **I. Procedural Posture**

On May 19, 2008, Gibbs filed this action against Union Pacific Railroad Company pursuant to the Federal Employer's Liability Act (FELA), 45 U.S.C. §§ 51 *et seq*. In Count I of his complaint, Gibbs alleged that he was performing his duties as a signal maintainer for Union Pacific on July 24, 2007, when he sustained injuries to his lower back, hips and legs. Gibbs alleged in Count II that he suffered cumulative trauma to his neck, left arm, and left elbow from his employment at Union Pacific Railroad because Union Pacific constantly required him to engage in excessive, dangerous, and repetitive manual labor. Union Pacific filed a Motion to Dismiss as a Discovery Sanction, accompanied by a supporting memorandum, on April 16, 2009.

## II. Facts

Gibbs began his railroad career in 1979 as a lineman for Burlington Northern Railroad. While working as a lineman in May 1986, Gibbs fell thirty feet from a pole. He subsequently lost 645 days of work because of the injuries he sustained from that fall. Additionally, working as a lineman put a substantial strain on Gibbs's knees. He underwent two knee surgeries, and filed two claims against Burlington Northern: one in the early 1980s, and then again in the early 1990s. As part of the second claim's settlement agreement, Gibbs left Burlington Northern in 1994.

Next, Gibbs went to work for Harris Corporation, where he assembled antennas. In 1996, he was hired by Toledo, Peoria, and Western Railroad, where he worked as a signal maintainer. Three years later, he went to Kansas City Southern Railroad, where he also worked as a signal maintainer. In 2000, Union Pacific Railroad hired Gibbs to work as a signalman. Gibbs injured his back in July 2007, and underwent surgery for that injury in January 2008.

## ANALYSIS

The Court may sanction a party for discovery abuse under Federal Rule 26(g), Federal Rule 37, and the Court's inherent authority. Federal Rule 26(g) states that every discovery response must be signed, and a party who signs a discovery response is certifying that "to the best of the person's knowledge, information, and belief formed after a reasonable inquiry. . . it is. . . not interposed for any improper purpose, such as to. . . cause unnecessary delay, or increase the cost of litigation." A party who violates Rule 26(g) is subject to sanctions, which "may include an order to pay the reasonable expenses, including attorney's fees, caused by

the violation." Fed. R. Civ. P. 26(g)(3).

Under Federal Rule 37, a district court may sanction a party for violating discovery rules. Fed. R. Civ P. 37(c)(1)(A)-(C). However, a party who engages in discovery abuses, even egregious ones, will not be sanctioned under Rule 37 unless a specific provision of Rule 37 was violated. *See Greviskes v. Universities Research Ass'n, Inc.*, 417 F.3d 752, 759 (7th Cir. 2005). For example, in *Greviskes*, the plaintiff used discovery records produced by the defendant to gain access to another individual's social security number, and then posed as that individual. *Id*. at 754. While the plaintiff's fraudulent conduct was highly egregious, no specific provision of Rule 37 was violated. *Id.* at 759. Therefore, the plaintiff could not be sanctioned pursuant to Rule 37. *Id*. Under similar circumstances where Rule 37 is not "technically" violated, a district court may sanction a party under its inherent authority. *Id*. (citing *Dotson v. Bravo*, 321 F.3d 663 (7th Cir. 2003)).

A district court has the inherent power to impose sanctions upon parties who have abused the judicial system. *Methode Electronics, Inc. v. Adam Technologies, Inc.*, 371 F.3d 923, 927-28 (7th Cir. 2004). The Court may dismiss a claim where the plaintiff delayed the judicial process or otherwise exhibited "contumacious conduct." *Greviskes*, 417 F.3d at 759 (7th Cir. 2005) (citing *Dotson v. Bravo*, 321 F.3d at 666). The district court must weigh the egregiousness of the plaintiff's conduct with "all aspects of the judicial process" to determine a proportionate sanction. *Id*.

In the instant motion, Union Pacific alleges that Gibbs committed discovery abuses by misrepresenting two material subjects: a prior back injury, and a prior lawsuit against

3

Burlington Northern Railroad.[1] Union Pacific contends that because Gibbs misrepresented these two subjects, he should be sanctioned under Rule 26, Rule 37, and the Court's inherent authority.

**I. Plaintiff's Alleged Misrepresentations**

Discovery began in 2008. On July 25, 2008, Gibbs certified his responses to Defendant's Interrogatories Regarding Count I. On December 2, 2008, Gibbs was deposed by Union Pacific. Immediately before the deposition began, Gibbs hand-delivered amended responses to the Count I Interrogatories to Union Pacific's attorney. In January 2009, at the request of Union Pacific, Gibbs was examined by Dr. R. Peter Mirkin. In February 2009, Union Pacific obtained Gibbs's employment records from Gibbs's former employer, Burlington Northern Railroad. Union Pacific alleges that Gibbs made material misrepresentations at various stages of the discovery process.

**A. Prior Back Injury**

Count I of Plaintiff's Complaint alleges that Gibbs sustained injuries to his lower back arising from an incident that occurred on July 24, 2007, while Gibbs was holding and adjusting the weight on a railroad crossing gate. In "Defendant's Interrogatories Regarding Count I Directed To Plaintiff," Gibbs was asked to give specific details regarding "any symptoms. . .or injuries, or. . .any accidents for which medical treatment has been required, to any area of the body which you claim was injured in the incident in this lawsuit." Gibbs

---

[1] Union Pacific also contends that Gibbs's claim should be dismissed as a discovery sanction because in 2000, when Gibbs applied to work for Union Pacific, Gibbs did not disclose his prior injuries. This fact is irrelevant to discovery abuse, as it occurred eight years before Gibbs filed this suit against Union Pacific. Additionally, Union Pacific supports the instant motion by asserting that Gibbs's deposition testimony indicates his shoulder, neck and elbow injuries were not the result of cumulative trauma. This argument is related to the merits of Gibbs's claim, and is irrelevant to discovery violations.

responded as follows:

> Through the years of working for the Railroads (sic), I may have had instances where I have experienced some back pain, but nothing like the pain and difficulty I have experienced since the incident referred to in the Complaint. Plaintiff reserves the right to supplement this Response as additional information becomes available.

Gibbs certified this answer, along with the others he gave to "Defendant's Interrogatories Regarding Count I," on July 25, 2008. Then, immediately prior to Gibbs's deposition on December 2, 2008, he hand delivered to Union Pacific's counsel his amended responses to the Count I Interrogatories. Gibbs amended his response to the above question by adding "I also suffered injuries in 1986 in Springfield, MO, but I do not recall any of the specifics of that injury including the treating doctors or hospitals."

At the deposition on December 2, 2008, Gibbs was asked by Union Pacific's counsel about an incident that occurred in 1986 where Gibbs fell thirty feet from a pole while working for Burlington Northern Railroad. Gibbs testified that he did not remember complaining of back pain after the fall. Later in the deposition, Union Pacific's counsel produced a medical record from the Hannibal Clinic (a medical facility in Hannibal, Missouri), which was dated August 6, 1986. The medical record stated that Gibbs was experiencing "severe low back pain" that started on May 1, 1986 after he fell thirty feet from a pole while working as a lineman for Burlington Northern.
Gibbs testified that he did not remember having persistent back pain, dizzy spells, or undergoing physical therapy, though the record from Hannibal Clinic indicated otherwise.

On January 26, 2009, Gibbs was examined by an orthopedic surgeon, Dr. R. Peter Mirkin, who specializes in spinal surgery. The evaluation took place pursuant to Union

5

Pacific's request. Dr. Mirkin's record of the visit stated that Gibbs denied any prior neck or back injuries.

However, in February 2009, Union Pacific obtained Gibbs's employment records from Burlington Northern. Burlington Northern provided these records to Union Pacific pursuant to Gibbs's authorization, though Union Pacific was required to set up a records deposition and subpoena the records. Those records showed that Gibbs suffered an on-site injury on May 1, 1986, and consequently missed 645 days of work, due to back pain.

| **July 25, 2008: Plaintiff's Original Response to Count I Interrogatories** | **"Through the years of working for the Railroads (sic), I may have had instances where I have experienced some back pain, but nothing like the pain and difficulty I have experienced since the incident referred to in the Complaint."** |
|---|---|
| **December 2, 2008: Amended Response to Count I Interrogatories** | **Plaintiff states that he "suffered injuries in 1986."** |
| **December 2, 2008: Plaintiff's Deposition testimony** | **Plaintiff states that in 1986 he fell thirty feet from a pole, but did not remember experiencing any back pain.** |
| **January 26, 2009: Plaintiff's examination by Dr. Mirkin, conducted at Defendant's request** | **Plaintiff denies any history of back pain or injuries.** |
| **February 2009: Defendant obtains Plaintiff's employment records from Plaintiff's previous employer, Burlington Northern RR** | **Records show that Plaintiff lost 645 days of work due to an on-site injury that occurred on May 1, 1986.** |

It is evident that Gibbs attempted to conceal his prior back injuries throughout the discovery process. While Gibbs consistently denied or minimized any prior back pain, records obtained by Union Pacific show that Gibbs sustained a serious back injury in 1986

that no reasonable person would be able to simply forget.

**B. Prior Lawsuit Against Burlington Northern Railroad**

In "Defendant's Interrogatories Regarding Count I Directed To Plaintiff," Gibbs was asked to give specific details regarding any former employers, including why he no longer worked for the employers. Gibbs stated that he left Burlington Northern Railroad in 1994 to make a career change. Gibbs was also asked to give information regarding any prior personal injury lawsuits. Gibbs answered "None that I can recall at this time. Plaintiff reserves the right to supplement this response should additional information become available." Then, immediately prior to Gibbs's deposition on December 2, 2008, he hand delivered to Union Pacific's counsel his amended responses to the Count I Interrogatories. Gibbs amended his response to the question regarding any prior personal injury lawsuits by stating "As I recall, I had other claims with the Burlington Railroad in the 1980s and 1990s."

During Gibbs's deposition on December 2, 2008, he testified that he remembered giving a deposition in the claim that he filed against Burlington Northern in the early 1980s. Gibbs further testified that the claim involved a work-related injury, and that it was settled out-of-court. In addition, Gibbs also testified about the lawsuit he had against Burlington in the early 1990s. Gibbs stated that he left Burlington Northern in conjunction with the settlement of that lawsuit.

| **July 25, 2008: Plaintiff's Original Response to Count I Interrogatory #2, explaining why he no longer worked for Burlington Northern Railroad:** | "Left for career change." |
|---|---|

| | |
|---|---|
| **July 25, 2008: Plaintiff's Original Response to Count I Interrogatory when asked if he had ever made other personal injury claims:** | "None that I can recall at this time. Plaintiff reserves the right to supplement this Response should additional information become available." |
| **December 2, 2008: Amended Response to Count I Interrogatories** | "As I recall, I had other claims with the Burlington Railroad in the 1980s and 1990s. . ." |
| **December 2, 2008: Plaintiff's Deposition testimony** | **Plaintiff testifies that he remembers being deposed for a claim he filed against Burlington Northern in the 1980s, and that he left Burlington Northern in conjunction with the settlement of a lawsuit in the 1990s.** |

It is evident that Gibbs attempted to conceal his prior lawsuits against Burlington Northern in his original interrogatories. Less than six months later, with his deposition looming, Gibbs was willing to give Union Pacific that information. Gibbs's only explanation was that, "over time, things became more clearly (sic) to me." Nonetheless, it is difficult for the Court to believe that Gibbs merely forgot that he previously filed two claims against another railroad involving personal injuries. It is even more unbelievable after considering that the settlement of the second lawsuit was related to Gibbs's resignation from Burlington Northern.

**II. Discovery Sanctions**

In the instant motion, Union Pacific asserts that David Gibbs should be sanctioned for the aforementioned misrepresentations under Rules 26, 37, and the Court's inherent authority. Union Pacific contends that the appropriate sanction is dismissal.

**A. Rule 26**

Under Rule 26 a party who signs a discovery response is certifying that "to the best of the person's knowledge, information, and belief formed after a reasonable inquiry. . . it is. . . not interposed for any improper purpose, such as to. . . cause unnecessary delay, or increase the cost of litigation." Here, Gibbs's original and amended responses to the Count I interrogatories are at best, evasive; at worst, they are deceitful. It is difficult for the Court to believe that Gibbs forgot nearly two years of his life when he was restricted from working because of a severe back injury that occurred while Gibbs was working for a previous employer. It is likewise difficult for the Court to believe that Gibbs failed to remember that he had previously filed two lawsuits against Burlington Northern, and that he resigned from Burlington Northern in conjunction with the settlement of the second lawsuit. When Gibbs certified his responses to the Count I Interrogatories on July 25, 2008, and December 2, 2008, he was certifying that he had fulfilled his duty to answer those interrogatories as accurately and completely as possible. The answers Gibbs gave were not accurate, nor were they complete. Gibbs has not offered any reasonable explanation for his inaccurate and incomplete answers.

Rule 26(g)(3) authorizes the Court to order a party to pay the reasonable expenses, including attorney's fees, resulting from an improper certification. Here, Gibbs's improper certification of inaccurate and incomplete discovery responses resulted in unnecessary delay and an increased cost of litigation for Union Pacific. Gibbs withheld information in those Interrogatories that was highly relevant to the allegations in his Complaint. Union Pacific expended time and resources to propound Interrogatories upon Gibbs, yet Gibbs failed to

respond truthfully to the Interrogatories. Union Pacific also expended time and resources deposing Gibbs, without having reasonable notice regarding Gibbs's prior back injury and personal injury claims. Union Pacific expended further time and resources subpoenaing Gibbs's employment records from Burlington Northern. Therefore, Gibbs must be responsible for the reasonable expenses resulting from the improper certification of both his original and amended Responses to Defendant's Interrogatories Regarding Count I.

**B. Rule 37**

Union Pacific argues that Gibbs's Complaint should be dismissed as a discovery sanction pursuant to Rule 37. However, neither dismissal nor other sanctions under Rule 37 are appropriate unless the plaintiff "technically" violated Rule 37. *See Greviskes*, 417 F.3d at 759. Union Pacific cites to Rule 37(c), which states that a party who fails to supplement a discovery response may be sanctioned under Rule 37(b)(2)(A)(i)-(vii). But, Gibbs did not "technically" violate Rule 37(c) by concealing his back injuries. Gibbs supplemented his original responses to interrogatories, though both his original and amended responses were evasive and arguably deceitful. While Gibbs's evasiveness and possible deceit warrant sanctions under Rule 26 because he certified that he was giving honest and complete information, no specific provision of Rule 37(c) was violated.

**C. The Court's Inherent Authority**

A district court has the inherent power to impose sanctions upon parties who have abused the judicial system. *Methode Electronics, Inc. v. Adam Technologies, Inc.*, 371 F.3d 923, 927-28 (7th Cir. 2004). The Court may dismiss a claim where the plaintiff delayed the judicial process or otherwise exhibited "contumacious conduct." *Greviskes*, 417 F.3d at 759

(7th Cir. 2005) (citing *Dotson v. Bravo*, 321 F.3d 663, 666 (7th Cir. 2003)). The district court must weigh the egregiousness of the plaintiff's conduct with "all aspects of the judicial process" to determine a proportionate sanction. *Id*.

In the instant case, Gibbs's conduct warrants sanctions under the Court's inherent authority. Gibbs gave misleading testimony at his deposition regarding his back injury. According to Gibbs's testimony, he had no recollection of back pain that resulted from falling 30 feet from a pole while working for Burlington Northern Railroad on May 1, 1986. Gibbs testified that he had no recollection of undergoing physical therapy or having persistent pain in his back. Gibbs testified that he "kind of, yes, a little bit" remembered being off work for several months because of "severe back pain." Moreover, when Dr. Mirkin examined Gibbs at Union Pacific's request, Gibbs also denied any prior back injuries.

Ultimately, Union Pacific recovered records from Burlington Northern which showed that Gibbs lost almost two years of work due to an on-site injury that occurred on May 1, 1986. Gibbs has not offered any explanation for why he could not remember a back injury that affected two years of his life. It is unreasonable to believe that he simply forgot. While the untruthful answers Gibbs gave at his deposition and to Dr. Mirkin delayed the judicial process, his repeated denials do not warrant dismissal of his claim. However, monetary sanctions are proportionate to the Gibbs's violations. Gibbs should be responsible for Union Pacific's reasonable costs related to the deposition and examination by Dr. Mirkin.

## CONCLUSION

For the foregoing reasons, the Court finds that Plaintiff David Gibbs has committed discovery violations and delayed the judicial process. Pursuant to Rule 26, the Court

**ORDERS** that Plaintiff David Gibbs pay the reasonable costs and attorney's fees incurred by Defendant Union Pacific that are related to Defendant's Interrogatories Regarding Count I Directed to Plaintiff. Pursuant to the Court's inherent authority, the Court **ORDERS** that Plaintiff David Gibbs pay the reasonable costs and attorney's fees incurred by Defendant Union Pacific that are related to the deposition of David Gibbs, and the examination of David Gibbs by Dr. R. Peter Mirkin. The Court **ORDERS** Defendant Union Pacific to submit a bill of costs to the Court. The Court **DENIES** Defendant's Motion for Dismissal as a Discovery Sanction.

**IT IS SO ORDERED.**
**DATED: July 15, 2009**

          **s/ J. Phil Gilbert**
          **J. PHIL GILBERT**
          **DISTRICT JUDGE**