UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

DAVID P. GIBBS,

              Plaintiff,

      v.                                Case No. 08-cv-355-JPG

UNION PACIFIC RAILROAD COMPANY,

              Defendant.

## MEMORANDUM AND ORDER

This matter comes before the Court on the Motion for Summary Judgment (Doc. 32) and Memorandum of Law in Support thereof (Doc. 33) filed by Defendant Union Pacific Railroad Company ("Union Pacific"). Plaintiff David P. Gibbs ("Gibbs") has responded (Doc. 36), and Union Pacific has replied (Doc. 39). Gibbs alleges that Union Pacific is liable under the Federal Employers' Liability Act ("FELA"), 45 U.S.C. § § 51 *et seq.*, for injury incurred on July 24, 2007, and for cumulative trauma injury sustained throughout the course of Gibbs' employment with Union Pacific. For the following reasons, the Court **DENIES in part and GRANTS in part** Union Pacific's motion.

## BACKGROUND

I.      **Summary Judgment Standard**

Summary judgment is proper where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Spath v. Hayes Wheels Int'l-Ind., Inc.*, 211 F.3d 392, 396 (7th Cir. 2000). The reviewing court must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in favor of that party. *See*

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Spath*, 211 F.3d at 396.

In responding to a summary judgment motion, the nonmoving party may not simply rest upon the allegations contained in the pleadings but must present specific facts to show that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 322-26; *Johnson v. City of Fort Wayne*, 91 F.3d 922, 931 (7th Cir. 1996). A genuine issue of material fact is not demonstrated by the mere existence of "some alleged factual dispute between the parties," *Anderson*, 477 U.S. at 247, or by "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, a genuine issue of material fact exists only if "a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Anderson,* 477 U.S. at 252.

## II.    Facts

Taken in the light most favorable to Gibbs, the evidence establishes the following facts.

Gibbs worked in railroading as a signalman/signal maintainer for Union Pacific. Signalmen sometimes work as members of a signal gang due to heavy lifting associated with the job. Also, to ease the physical strain of its employees, Union Pacific had boom trucks to assist in setting up a signal mast or picking up a signal house. The availability and use of such boom trucks depended on the time afforded completion of a specific task.

On July 24, 2007, as part of a six-man signal gang, Gibbs' job duties included the installation of new gates and weights at a railroad crossing. This represented approximately the sixth time that Gibbs had been given such an assignment. On that date, Gibbs wore all available safety equipment with the exception of a back brace, which had never been furnished by Union Pacific nor requested by Gibbs. Gibbs had not made Union Pacific aware of his prior history of back problems. There were two trucks at the job site with lifting apparatuses, and at least one of

2

these trucks carried a working boom.  Gibbs wanted to use a boom truck and/or to attach a strap to the gate to assist in adjusting the weights; however, due to a supervisor and other coworkers that did not take well to suggestions, Gibbs never verbalized such desires.  In fact, Gibbs kept most suggestions to himself at work, as his input was always shot down.

While lifting and holding a weight in an effort to adjust it onto a gate (the weight had already been placed on the gate by Gibbs' coworkers), Gibbs experienced pain in his lower back. Gibbs testified that the weight weighed approximately two-hundred pounds.  Roughly ten minutes later, he expressed such discomfort to a coworker, Tyler.  Although Gibbs had been on uneven, freshly excavated terrain at the time of his injury, he had not slipped, tripped, or fallen. At the time of his injury, Gibbs had been working in the same area as Tyler and another coworker, Zack, although he asked neither for assistance in lifting/adjusting the weight. Following his ten-hour shift, Gibbs went to a hospital emergency room for treatment of his pain and ultimately had to undergo surgery.

On an accident report filled out two days later, Gibbs attributed the aforesaid injury to "bad footing and lack of manpower."[1]  With respect to "lack of manpower," Gibbs felt that an eight-man signal gang would have been more appropriate than the six assigned, as things could get "chaotic" due to the many aspects of the job.  (Gibbs Dep. 100:1-2.)  Gibbs admits that, at the time of his injury, he was exerting excessive force but felt physically capable of performing the task.  Gibbs further admits that he did not ask for help from Tyler, Zack, or any other coworkers.  Further, Gibbs admitted that his action or inaction on July 24 violated three Union

---

[1]Gibbs apparently abandoned his claim of "bad footing."  Gibbs' deposition did not attribute his injury to unstable terrain according to Plaintiff's Memorandum in opposition to summary judgment (Doc. 36).

3

Pacific Safety Rules, including rules on safe lifting, lifting with two or more employees, and attaining proper footing and proper grip.

In addition to the injury sustained on July 24, 2007, Gibbs asserts a claim of cumulative injury against Union Pacific.  In his complaint, Gibbs states that he sustained such injury "as a result of jolting, walking on uneven ballasts, climbing, lifting, carrying, repetitive motion and overuse and awkward positioning, working long and excessive hours, working without adequate and proper personal protective equipment, [manpower assistance, and/or tools and equipment throughout the course of his career with Union Pacific]."  (Gibbs Compl. ¶ ¶ 15-16.)  He first noticed pain from this injury during a one-time job in November 2006, as he pulled and jerked a wire while on top of a pole.  Specifically, Gibbs experienced pain in his arm, elbow, and neck simultaneously.  While the pain in his arm and elbow went away following treatment by a chiropractor, Gibbs' neck pain persisted until surgery in January 2008 and still somewhat lingers to this day.  In his deposition, Gibbs admitted that this specific pulling and jerking "probably pretty much" caused any longstanding pain in his neck.  (Gibbs Dep. 35:12-18.)  He never filed an injury report regarding the November 2006 incident.

## ANALYSIS

Gibbs has presented two claims under FELA.  First, Gibbs alleges that he incurred injury to his lower back, hips, and legs on July 24, 2007, while employed by Union Pacific and attempting to adjust weights on a railroad gate.  And, second, Gibbs alleges that he sustained cumulative trauma injury to his left arm, left elbow, and neck throughout his career with Union Pacific.

Under FELA, "Every common carrier by railroad. . . shall be liable in damages to any person suffering injury while he is employed by such carrier. . . for such injury. . . resulting in

4

whole or in part from the negligence of any of the officers, agents, or employees of such carrier . . . ." 45 U.S.C. § 51 (2006).  FELA's enactment stemmed from the belief that "justice demands that one who gives his labor to the furtherance of the [railroad] enterprise should be assured that all combining their exertions with him in the common pursuit will conduct themselves in all respects with sufficient care that his safety while doing his part will not be endangered." *Sinkler v. Mo. Pac. R.R. Co.*, 356 U.S. 326, 330 (1958).  In other words, FELA seeks to "provide broad remedial measures" to railroad employees. *Walker v. Ne. Reg'l Commuter R.R. Corp.*, 225 F.3d 895, 897 (7th Cir. 2000) (citing *Lisek v. Norfolk & W. Ry. Co.*, 30 F.3d 823, 831 (7th Cir. 1994)).

A FELA claim cannot survive summary judgment unless the plaintiff has offered "evidence proving the common law elements of negligence, including duty, breach, foreseeability, and causation."  *Williams v. Nat'l R.R. Passenger Corp.*, 161 F.3d 1059, 1062 (7th Cir. 1998) (citing *Fulk v. Ill. Cent. R.R. Co.*, 22 F.3d 120, 124 (7th Cir. 1994)).  However, the applicable negligence standard is much more relaxed than that of traditional tort law, as the proof needed to get a FELA case to a jury is whether "employer negligence played any part, *even the slightest*, in producing the injury."  *Williams*, 161 F.3d at 1061 (emphasis added) (quoting *Consol. Rail Corp. v. Gottshall*, 512 U.S. 532, 542 (1994)).

Turning to the first two elements of FELA negligence, a railroad has a general duty to provide its employees with a safe workplace. *McGinn v. Burlington N. R. Co.*, 102 F.3d 295, 300 (7th Cir. 1996) (citing *Peyton v. St. Louis Sw. Ry. Co.*, 962 F.2d 832, 833 (8th Cir. 1992)). When determining if a railroad breached that duty, the appropriate standard of care is that of a prudent person. *Williams*, 161 F.3d at 1062 (citing *Reardon v. Peoria & Pekin Union Ry. Co.*, 26 F.3d 52, 54 (7th Cir. 1994)). Thus, a railroad that fails to correct "circumstances that a 'reasonable

person would foresee as creating a potential for harm'" has breached its duty to its employees. *Id.* (citing *McGinn*, 102 F.3d at 300). Potential harm is foreseeable when the railroad knew or reasonably should have known about the harmful circumstances. *Holbrook v. Norfolk S. Ry. Co.*, 414 F.3d 739, 742-744 (7th Cir. 2005). Consequently, under FELA, negligence is not established unless the plaintiff shows the defendant had actual or constructive notice of the unsafe working conditions. *Id.* at 742.

In line with the elements of duty and breach, there is a relaxed standard for proving causation under FELA. *Coffey v. Ne. Ill. Reg'l Commuter R.R. Corp. (METRA)*, 479 F.3d 472, 476 (7th Cir. 2007) (citing *Heater v. Chesapeake & Ohio Ry.*, 479 F.3d 1243, 1246-47 (7th Cir. 1974) ("The fact that there might have been a number of causes of the injury is . . . irrelevant as long as one cause may be attributable to the railroad's negligence.")). Also, railroad defendants who are sued by their employees under FELA are barred from employing "traditional" liability defenses such as the fellow servant rule, contributory negligence, and assumption of risk. *Green v. CSX Transp., Inc.*, 414 F.3d 758, 766 n. 2 (7th Cir. 2005) (citing *Williams*, 161 F.3d at 1061).

## I.     Injury Incurred on July 24, 2007

As a preliminary matter, the Court notes that, while Gibbs' first claim might not survive a motion for summary judgment in the traditional tort context, the low negligence threshold of FELA ensures that this count will live to see another day.

Here, taking the assertions of Gibbs in his deposition as true, it appears that July 24, 2007, represented a hectic day for Gibbs' signal gang. It was understood that everyone, including the gang's supervisor, was in a rush to get off early. Further, the gang was possibly understaffed, as Gibbs contends that an eight-man crew would have better served safety and efficiency than the six assigned. Gibbs had made suggestions at work before, but his input was

not wanted.  It is not difficult to imagine that a rushed atmosphere, coupled with an unreceptive supervisor and coworkers, meant that every man kept busily to himself that day.  Such haste and solitude at a dangerous job site may potentially breed a foreseeable unsafe workplace.  For example, Union Pacific points out that at least one boom truck had been present and could have prevented Gibbs' injury; however, the rush on the job likely prevented Gibbs from requesting its use.  In fact, Gibbs stated that the use of the boom trucks depended on "how big a hurry [they] were in."  (Gibbs Dep. 73:10-12.)  The same logic applies to Gibbs' failure to ask Tyler and Zack for assistance, as they were conceivably busy at work while Gibbs lifted the weight that caused his back injury.  If Gibbs previously made similar suggestions that went ignored as he claims, an inference exists that Union Pacific had constructive knowledge of these unsafe conditions.  Consequently, a genuine issue of material fact exists as to whether a rushed and unreceptive atmosphere truly existed and created an unsafe workplace on July 24, 2007.

Union Pacific failed to provide Gibbs with a back brace and, as explanation, argues that he never requested one and did not make his history of back problems known.  However, if Gibbs was lifting two hundred pound weights as part of his job, the foreseeability that resulting strain could cause back injury must be imputed to Union Pacific.  It is not a stretch to hold that the lifting of a significantly less amount of weight should require the issuance of back braces, regardless of an employee's request or disclosure of prior back pain.  At the time, Gibbs felt physically capable of lifting the weight, and the Court notes that July 24 represented roughly his sixth time doing such work.  Even though Gibbs admittedly exerted excessive force, he may have exceeded his lift limits in an effort to expedite the rush on the project.  Consequently, a genuine issue of material fact exists as to whether Union Pacific's failure to supply Gibbs with a back brace created an unsafe workplace.

7

Gibbs' admitted violation of three Union Pacific Safety Rules bears little influence on the Court's ruling. Pursuant to *Green*, the traditional tort defenses of contributory negligence and assumption of risk cannot be invoked in a FELA action. Union Pacific correctly points out that Gibbs cannot be the sole cause of his injury. However, for the reasons aforementioned, Union Pacific potentially exhibited negligence, however slight.

Union Pacific attempts to draw analogy from the instant case to *Wadiak v. Illinois Central Railroad Company*, where the Seventh Circuit found that proper equipment and assistance had been available to the plaintiff and thereby precluded submission of the case to the jury. *Wadiak v. Ill. C. R.R. Co.*, 208 F.2d 925, 930 (7th Cir. 1953). This case is especially guiding, as it addressed a FELA plaintiff who hurt his back while lifting a heavy barrel. *Id*. at 926-27. The *Wadiak* court held against the plaintiff in adopting the following rationale:

> [Plaintiff] was not injured because he did not have equipment, for he had access to sufficient and adequate tools and devices. He was injured because he saw fit not to use the equipment but to ignore it and to handle the barrel manually. He was not injured because he needed help and did not have it but because he saw fit not to ask for help. He was not injured because the car had been improperly loaded and carried by defendant in such condition, but, because, when he was directed to repair the condition, without approaching his superior, he voluntarily adopted a dangerous method of doing so instead of a safe one.

*Id.* at 930. It is true that Gibbs possibly had equipment and help available to assist in lifting the weight; however, the working conditions that Gibbs experienced stand in contrast to those present in *Wadiak*. General hurriedness of the signal crew leads to an inference in Gibbs' favor that, while a boom truck and coworkers may have been nearby, their assistance may have been unrealistic or discouraged. Like Mr. Wadiak, Gibbs did not approach his supervisor on the day in question. However, Gibbs has offered a plausible explanation for his inaction at this stage in litigation: his suggestions had met a resounding "no" numerous times in the past, and he feared

any new comments would be shut down all the same.  Unlike the presumably receptive and open atmosphere in *Wadiak*, Gibbs appears to have acted in a manner responsive to his environment.

The text, policy, and case law comprising FELA makes clear that even a slight showing of negligence on the part of Union Pacific will reserve this claim for the jury, which the Court sees fit to do here.  Genuine issues of material fact exist as to whether a rushed work atmosphere and Union Pacific's failure to supply Gibbs with a back brace constituted an unsafe work environment.  If a foreseeably unsafe work site is found to have caused Gibbs' injury, he will be entitled to recovery.  The current facts and inferences, taken as a whole in Gibbs' favor, illustrate the evidentiary scintilla of negligence that is required in FELA claims.  Accordingly, Union Pacific is not entitled to summary judgment on this claim.

## II.      Cumulative Trauma Injury

Gibbs' allegation of cumulative trauma injury is given little attention by the parties.  The Court will follow suit.

While Gibbs' complaint points to a number of sources of cumulative injury throughout his career with Union Pacific, he admitted in his deposition that pulling and a jerking a wire while atop a pole "probably pretty much" caused such injury in November 2006.  Climbing on top of poles and straightening wires was not part of Gibbs' ordinary job description, and he testified that this experience represented a one-time assignment.  Gibbs posits that cumulative trauma existed prior to November 2006 but only manifested after the wire-pulling incident.  Gibbs does not cite any expert or professional to support his stance; instead, he relies on the non-binding maxim of a Florida appellate court.  The Court fails to see how a one-time incident equates to cumulative injury or how Gibbs can could convince a jury to believe an unsupported "manifestation theory" that his own testimony contradicts.  No genuine issues of material fact

exist as to this claim; as such, Union Pacific is entitled to summary judgment on Gibbs' second count.

## CONCLUSION

In conclusion, Gibbs' first claim has survived summary judgment, but his second claim fails to present any genuine issues of material fact.  Accordingly, the Court **DENIES** Union Pacific's Motion for Summary Judgment (Doc. 32) on Count I as to injury that Gibbs incurred on July 24, 2007.  The Court **GRANTS** said motion on Count II as to cumulative injury sustained throughout the course of Gibbs' employment with Union Pacific.

**IT IS SO ORDERED.**
**DATED: September 23, 2009**

s/ J. Phil Gilbert
**J. PHIL GILBERT**
**DISTRICT JUDGE**